IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**HOPE IRVIN, as Personal Representative**
**of the ESTATE OF VINCENT WOOD, Deceased,**

    **Plaintiff**

vs.                                                  15cv00550 SCY-KBM

**KATHERINE WRIGHT, individually and in her**
**official capacity as an Albuquerque Police Officer**
**JEFFREY BLUDWORTH, individually and in his**
**official capacity as an Albuquerque Police Officer,**
**and CITY OF ALBUQUERQUE.**

    **Defendants.**

## PLAINTIFF'S MOTION AND MEMORANDUM OF LAW TO EXCLUDE THE EXPERT TESTIMONY OF CHARLES JOYNER

**COMES NOW,** Plaintiff, by and through her attorneys Frances Crockett and Katherine Wray, hereby moves this court to exclude the Defendants' police-procedures and training expert (Mr. Charles Joyner). Mr. Joyner's proposed expert testimony on police procedures and training is more prejudicial than probative because it will not assist the trier of fact to understand the evidence or determine a fact in issue, and its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, in violation of Federal Rules of Evidence 104, 401, 402, 403 and 702. Defendants' counsel was contacted as to whether they oppose this motion, but as of the time of this filing, Plaintiff's counsel have had no response. Due to the nature of the Motion, Plaintiff's counsel assumes Defendants oppose.

    **I.**    **Introduction**

Mr. Joyner should not be allowed to testify at trial because his opinions do not meet the test for admissibility set forth in *Daubert*, 509 U.S. 579 in that his opinions are

1

unreliable, speculative, not based in science and will not assist the trier of fact to understand or determine whether the force used by Defendant Bludworth and Wright against Plaintiff was unreasonable or unlawful.

*Graham v. Conner,* 490 U.S. 386 (1989) and *Tennessee v. Garner*, 471 U.S. 1 (1985) set forth the law by which courts are to review use of force cases and Mr. Joyner's opinions are not consistent with these standards, nor relevant in relation to them.  Mr. Joyner's opinions are not relevant to determining whether the officers' conduct was reasonable on the scene.  See *Medina v. Cram*, 252 F.3d 1124, 1133 (10th Cir. 2001); *Romero v. Bd. of County Comm'rs*, 60 F.3d 702, 705 (10th Cir. 1995); *Wilson v. Meeks*, 52 F.3d 1547, 1554 (10th Cir. 1995*), abrogated on other grounds by Saucier v. Katz*, 533 U.A. 194 (2001).

As explained in Plaintiff's Motion for Summary Judgment [Doc. 60] filed May 6, 2016, on July 5, 2013, Vincent Wood ("Vincent") was shot and killed in a Circle K parking lot during an investigation and attempted detention by the Albuquerque Police Department ("APD"). In their investigation and attempted detention, APD officers failed to accommodate Vincent's mental illness and failed to recognize Vincent's behavior as demonstrating mental illness.  Instead, APD attempted to get "hands on" with Vincent and detain him before utilizing crisis intervention training, despite the stability of the scene and the fact that Vincent was posing no immediate threat to himself or anyone else before APD arrived. As a result, APD violated the Americans with Disabilities Act ("ADA").

As a result of violating Vincent's rights under the ADA by, among other things, not utilizing his training which was meant to accommodate persons who suffer from

mental health issues, Defendant Bludworth created the need to use force with Vincent and indeed did so, killing Vincent. What is important to recognize is that Defendants do little to nothing to acknowledge this fact and instead focus the court solely to the place in the encounter when Vincent pulled the knives out of his backpack. But wait, one must always ask as the Courts require, how did we get here? How did Vincent go from standing in the parking lot of the Circle K with no weapons in his hands, calm and posing no threat to himself or anyone else to pulling out two knives out of his backpack? Plaintiff explains this in her Motion for Summary Judgment [Doc. 60] and for brevity's sake and as allowed under the D.N.M.LR-Civ.7.1(a) Plaintiff refers the Court to said motion and the facts and arguments outlined therein. Defendants' expert has admitted that he can offer no expert testimony as to any aspect of this case except the use of force, i.e. at the point that the knives were pulled out of Mr. Wood's backpack. Given he admits that he cannot opine as to the mental health of Mr. Wood or any aspect thereto such as the importance of turning off your sirens and lights before interacting with Mr. Wood, Mr. Joyner's testimony would only go to confuse and mislead the jury among other things.

**II. Argument**

Plaintiff deposed Mr. Joyner on March 21, 2016. During the deposition Mr. Joyner admitted the following: See Deposition of Joyner attached hereto as Exhibit A, 70:14-72:4.

```
           70
14     Q. (BY MS. CARPENTER)  You said what caused this to
15   escalate quickly was Mr. Wood, right?
16     A. Correct.
17     Q. So, do you have -- do you have any expertise or
18   qualifications to give me any testimony today in regards to any
```

```
19  aspect of what may have triggered Mr. Wood's mental health
20  disorder, what words or actions of the officers would have
21  triggered Mr. Wood to act the way that he acted?
22      A.  Not any more than I could tell you what triggered him
23  to threaten two teenagers earlier.  I don't know.
24      Q.  Okay.  All right.  You agree with me that you do not
25  have the -- the qualifications such as my expert, Dr. Kernen,
                71
 1  to opine as to Mr. Wood's mental health disorder?
 2      A.  Correct.  My testimony is dealing with use of force.
 3      Q.  Okay.  So, if I asked you questions regarding whether
 4  or not the lights and sirens caused Mr. Wood to go into a state
 5  of psychosis, you would not be able to give me any opinions in
 6  regards to that, correct?
 7      A.  Yes, I can give you an opinion as to that, as it
 8  deals with use of force.
 9      Q.  By -- I'm saying -- I'm saying expert opinion.  Let
10  me --
11      A.  Yes.
12      Q.  -- qualify that.
13      A.  I can give you an expert opinion as to the use of
14  force and to why that was done.
15      Q.  Right.  No.  I'm talking about Mr. Wood.  Can you
16  give me any expert opinion as to why the lights and sirens
17  would have triggered -- how they would have triggered Mr. Wood
18  as far as his reaction to those?
19      A.  No.  I cannot testify as to what Mr. Wood's reaction
20  to that is.  I can testify as to why that's appropriate use of
21  force.
22      Q.  Okay.  Fair enough.  So, same question.  And, I mean,
23  this cuts a lot of my questions.  If you're willing to
24  stipulate that you don't have the expertise to opine as to
25  these things, then we can cut to the chase here.
                72
 1      A.  Yes.  I -- I --
 2      Q.  So, you don't have --
 3      A.  My expertise is in use of force.  It's not in mental
 4  health issues.
```

Mr. Joyner has no knowledge of the incident itself, as he was not on the scene where Plaintiff was shot and killed by Bludworth and Wright.  Mr. Joyner has no individual knowledge of the training of either Defendant Wright or Bludworth on crisis intervention, use of force, or interactions with persons who suffer with mental illness. Id.

at 9:2-11:8. Mr. Joyner admits that he is giving opinion as to how mental health relates to the use of force despite his later admission that he is unqualified to do so. He states that he is qualified to render an opinion as to mental health and how it relates to use of force because, "I have a bachelor's degree in psychology, I have a master's degree in psychology, I have attended the standard training that the FBI requires on dealing with people that are mentally ill, and then I've attended the courses and completed the courses that the Texas Commission on Law Enforcement requires to certify their peace officers". Id. 6:6-7:24. Mr. Joyner just completed, roughly one year prior to the taking of his deposition, a basic CIT course while attending a law enforcement training academy which is the same as basic police academy training. He states he has the qualifications to provide expert testimony on the ADA based on a mandatory training as required by the FBI when he was working for the FBI, and training from the law enforcement academy of Texas (basic law enforcement training), and he did some research on his own via the DOJ standards on ADA. Id. at 12:22-13:15. His qualifications are no better than the Defendant Officers or attorneys in this case.

Mr. Joyner had no knowledge other than what he read in the press about the Department of Justice investigation into APD's use of force and how they have found the Use of Force training and Standard Operating Procedure that was being used on the date of Vincent's death (July 5, 2013) to be unconstitutional as well as the fact that APD uses a disproportionate use of force against persons who suffer from mental health issues[1]. See 72:17- 73:24. Most compelling is that Mr. Joyner admits that he has not reviewed the training of Defendant Bludworth or Wright ("Defendant Officers") in regards to how they are to interact with persons who suffer from mental illness, which is the heart of the

---

[1] See Doc. 60, section IV, pages 30-38 for briefing and citations related to this subject.

5

matter in this case. *Id.* Mr. Joyner also admits he has no idea if the Defendant Officers had any training regarding communication. *Id.* at 74:11-15. Joyner testified that he has no expertise in evaluating someone with regards to mental health. *Id.* at 75:22-25. Mr. Joyner is also ignorant as to what the Courts have opined as far as how law enforcement is to deal with persons who suffer with mental health issues. Id. at 78:9-25. Joyner also testifies in regards to the "21 foot rule" or "Tueller Drill" which supports his testimony that the officers use of deadly force was reasonable. *Id.* at 82:16-84:21. He also admits that it is not based on science but only on drills. *Id.* Joyner cites in his report that people who have Schizophrenia are more likely to commit assault citing a particular article for this opinion. Yet he admits that he never read the entire article and only the abstract. *Id.* at 84:24-85:15. Mr. Joyner admits that he has no expertise for any of the opinions he sets forth on pages 18-25 entitled Response to Report by Sharon Kernen of his report and at a minimum this portion of his report should be stricken as well as pages 17-20 of his report as it deals with the "21 foot rule" and addresses that the reasonableness of the use of force based on this. *Id.* at 85:25-88:15. See relevant portions of the report attached hereto as Exhibit B.

### III. Legal Analysis

Joyner's report and testimony fails to meet the standard for admissibility. An expert may give an opinion in testimony if the testimony is based upon sufficient facts or data; the testimony is the product of reliable principles and methods; and the expert has applied the principles and methods reliably to the facts of the case. Fed. R. Evid. 702. A district court must insure that the expert testimony is reliable. *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579, 589 (1993).

The district courts employ gate-keeping function aimed to keep out "expertise that is *fausse* and science that is junky," *Kumho Tire Co., LTD. v. Carmichael*, 526 U.S. 137, 149 (1999). The Court as gatekeeper must assess the reasoning and methodology underlying the expert's opinion to determine whether it is scientifically valid and applicable to a particular set of facts.

The objective of the district court's gate-keeping function is to ensure "the reliability and relevancy of expert testimony." *Kumho, supra* at 1176. Most significant is that the expert "employs in the courtroom <u>the same level of intellectual rigor</u> that characterizes the practice of the expert in the relevant field." *Id.* (emphasis added). To be reliable under *Daubert*, an expert's testimony must be based on scientific knowledge rather that "subjective belief or unsupported speculation." *Daubert*, supra at 590. The opinion must be based on facts. *Mitchell v. Gencorp, Inc.*, 165 F.3d 778, 781 (10th Cir. 1999).

A. <u>Federal Rule Evidence 702</u>

Federal Rule of Evidence 702 imposes three prerequisites on the admissibility of expert testimony. First, the "specialized knowledge" of the witness must "assist the trier of fact to understand the evidence or to determine a <u>fact</u> at issue" (emphasis added). Second, the expert must be qualified by "knowledge, skill, experience, training or education". Finally, the testimony must be based on "sufficient facts or data", the testimony is the product of reliable "principles and methods", and the "witness has applied the principles and methods reliably to the facts of the case". Fed.R.Evidence 702. The last requirement is commonly referred to as the gatekeeping function of the Court to ensure that only expert testimony that is both relevant and reliable is admitted. *Kumho*

*Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999); *Daubert v. Merrell-Dow Pharm., Inc.,* 509 U.S. 579, 592-93 (1993); *Dodge v. Carter,* 328 F.3d 1212 (10th Cir. 2003).

The testimony must not only be relevant, it also must not unfairly prejudice the jury, confuse the issues, or mislead the jury, nor can it cause undue delay, waste time, or result in the "needless presentation of cumulative evidence." Fed. R. Evid. 403. The "[r]eliability analysis applies to all aspects of the expert's testimony, including the facts underlying the opinion, the methodology and the link between the facts and the conclusion drawn. Consequently, the court must make a practical, flexible analysis of the reliability of the testimony considering relevant factors in the circumstances of the case." *Kumho,* 526 U.S. at 153 (citations omitted). Also, while *Daubert's* focus is on the methodology used in arriving at an opinion, the court must review conclusions as well. *Dodge*, 329 F.3d at 1222. The Court must review opinions to determine whether the only connection between the data and the opinion is the ipse dixit of the expert. *Id*. The burden is on the proponent of the expert testimony, Defendant in this case, to show by a preponderance of the evidence that his expert's testimony meets the *Daubert* standard. 509 U.S. at 592 & n.10.

B.  Police Procedures Opinions

Here, the Court must determine if the proposed expert testimony is relevant under the standard applied in an excessive force case where Plaintiff has alleged that there was not only no probable cause to detain or arrest Mr. Wood and that the excessive force was caused by the fact that the Defendant officers did not accommodate, as required under ADA and their own training, the mental health disability of Mr. Wood. See Doc. 60.

8

Joyner is expected to testify as he states in his report that the force used on Mr. Wood was reasonable despite his mental heath disability.

The first question is whether the opinion is helpful to any "fact" issue for the jury. It is unclear what fact Mr. Joyner's opinion is directed towards when he opines that Defendant Officers use of force was reasonable. Opinion testimony that a police officer acted properly necessarily examines officer training issues and issues related to police procedures. This District Court, with two affirmations from the Tenth Circuit, has consistently excluded opinions related to police procedures in a number of settings. *Tanberg v. Sholtis*, 401 F.3d 1151, 1161-7 (10th Cir. 2005); *Marquez v. City of Albuquerque,* 399 F.3d 1216 (10th Cir. 2005); *L'Esperance v. Mings*, CV-02-0258 (D.N.M. July 14, 2003)(Docket No. 138)(Armijo, J.). The offering of an opinion that Defendant Officers followed proper police procedures is irrelevant and confusing. The Tenth Circuit has made clear that the introduction of issues related to police procedures is likely to confuse a jury as to what standard to apply.

C. <u>Probable Cause Opinion</u>

An expert should not insert himself into the province of the jury and tell the jury whether in his opinion the officer had probable cause. Mr. Joyner's opinions are meant to bolster a probable cause decision, not to elucidate any facts. It is firmly established that, absent undisputed facts, which we have in this case (see Doc. 60) "it is a jury question in a civil rights suit whether an officer had probable cause to arrest." *DeLoach v. Bevers*, 922 F.2d 618, 622 (10th Cir. 1990), *cert. denied*, 502 U.S. 814, 112 S. Ct. 65, 116 L. Ed. 2d 41 (1991). If the Court permits the jury to determine whether the officer had probable cause, the answer will rise or fall on disputed facts and should not depend on

Joyner's opinion that probable cause existed to arrest. Whether the officer had probable cause is controlled by the interpretation of the Fourth Amendment provided by the Supreme Court and the Tenth Circuit. The jury is informed of the relevant legal standard by means of the Court's jury instructions. *L'Esperance v. Mings*, Civ-02-0258, Judge C. Armijo, July 14, 2003.

In *Clem v. Corbeau*, the Court excluded a police expert's testimony. 2004 WL 906503 at *2-3 (4th Cir. 2004). The expert's opinion regarding the reasonableness of the officer's use of force based on his particular interpretation of the contested facts risked "supplant[ing] a jury's independent exercise of common sense and its role of determining the facts." *Id*. Therefore, the testimony is not relevant.

Whether there is probable cause to arrest an individual is fact specific. "The probable cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances," it must be grounded in the facts and "events leading up to the arrest," which must when "viewed from the standpoint of an objectively reasonable officer amount to probable cause" to believe the arrested individual guilty of committing a crime. *Maryland v. Pringle,* 540 U.S. 366, 371 (2003) (internal quotation marks and citations omitted); *Brinegar v. United States*, 338 U.S. 160, 175-176, 93 L. Ed. 1879, 69 S. Ct. 1302 (1949)("Probable cause exists where 'the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed").

Expert witness testimony is not relevant or reliable in the area of whether the officer had probable cause.  An expert may not usurp the Court's role in instructing the jury on what legal standards to apply in a federal civil rights case, *see Specht v. Jensen*, 853 F.2d 805, 807-09 (10th Cir. 1988).  An expert may not usurp the jury's fact-finding role in determining whether the applicable legal standards have been met. *See United States v. Adams*, 271 F.3d 1236, 1245-46 (10th Cir. 2001).

Finally, the question of probable cause is based upon an officer's knowledge at the time the arrest was made.  *Baptiste v. J.C. Penney Co.,* 147 F.3d 1252 (10th Cir. 1998).  To allow an expert to sift through the facts learned after the fact would introduce facts not relevant to the decision to arrest.  Such a course of action would unnecessarily require the jury to consider extraneous issues and confuse the jury on the issue of probable cause.

D.  Lack of Methodology

Mr. Joyner's opinions are the illustration of ipse dixit.  *Dodge*, supra, informs us to examine 1) whether the opinion is susceptible to testing and whether any testing was completed; 2) whether the opinion has been subjected to peer review; 3) whether the rate of error is known and what that rate is; and 4) whether the field is accepted in science.  As stated above, Mr. Joyner admits that he has no specialized training or knowledge regarding mental health issues, the training actually received by Defendant Officers, or ADA or the case law surrounding law enforcement's obligations under the ADA in investigation and dentition of a suspect. To add insult to injury Joyner's report relied on an abstract of an article that contradicted what he thought it stood for and relies on the "21 foot rule" which is junk science at best.

11

Additionally, Mr. Joyner makes improper determinations based on his subjective opinion of what Mr. Wood was thinking as well as the Defendant Officers, which is improper. He also makes improper credibility determinations, specifically related to the witnesses in his report.

In addition, the unsubstantiated opinion would be extremely prejudicial to plaintiff under Federal Rule of Evidence 403.

WHEREFORE, Plaintiff respectfully requests that the Court grant her Motion and Memorandum of Law in support thereof and exclude the expert opinion and report of Mr. Charles Joyner and any such relief that the Court deems proper.

> Respectfully Submitted,
>
> LAW OFFICE OF FRANCES CROCKETT
>
> <u>*/s/ Frances Carpenter*</u>
> Frances Carpenter
> 925 Luna Circle NW
> Albuquerque, NM 87102
> Phone (505) 314-8884
> Fax (505) 835-5658
> frances@francescrockettlaw.com
> *Attorney for Plaintiff*

I hereby certify that a true and correct copy of the forgoing was served to all parties and counsel of record via the CM/ECF filing system this 19th day of May, 2016.

*/s/ Frances Carpenter*
Frances Carpenter

12