IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

HOPE IRVIN, as Personal Representative
of the ESTATE OF VINCENT WOOD, Deceased,

    **Plaintiff**

vs.                                                                                  15cv00550 SCY-KBM

KATHERINE WRIGHT, individually and in her
official capacity as an Albuquerque Police Officer
JEFFREY BLUDWORTH, individually and in his
official capacity as an Albuquerque Police Officer,
and CITY OF ALBUQUERQUE.

    **Defendants.**

**PLAINTIFF'S REPLY TO DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION AND MEMORANDUM OF LAW TO EXCLUDE THE EXPERT TESTIMONY OF CHARLES JOYNER [DOC 72]**

**COMES NOW,** Plaintiff, by and through her attorneys Frances Crockett and Katherine Wray, hereby submits this as her Reply to Defendants' Response to Plaintiff's Motion to Exclude the Expert Testimony of Charles Joyner and in support thereof states as follows:

    I.    Background

As explained in Plaintiff's Motion for Summary Judgment [Doc. 60] filed May 6, 2016, on July 5, 2013, Vincent Wood ("Vincent") was shot and killed in a Circle K parking lot during an investigation and attempted detention by the Albuquerque Police Department ("APD"). In their investigation and attempted detention, APD officers failed to accommodate Vincent's mental illness and failed to recognize Vincent's behavior as demonstrating mental illness. Instead, APD attempted to get "hands on" with Vincent and detain him before utilizing crisis intervention training, despite the stability of the scene and the fact that Vincent was posing no immediate threat to himself or anyone else

before APD arrived. As a result, APD violated the Americans with Disabilities Act ("ADA").

Defendants fail to respond and provide any explanation as to how Mr. Joyner's proposed expert testimony on police procedures and training is not more prejudicial than probative. Defendants do nothing to show how his testimony will in any way assist the trier of fact to understand the evidence or determine a fact in issue. See Federal Rules of Evidence 104, 401, 402, 403 and 702. The remaining arguments made by Defendants and as addressed herein are without support and as such should be denied.

II.     Argument and Authorities

The objective of the district court's gate-keeping function is to ensure "the reliability and relevancy of expert testimony." *Kumho, supra* at 1176**.** Most significant is that the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of the expert in the relevant field." *Id.* (emphasis added). To be reliable under *Daubert*, an expert's testimony must be based on scientific knowledge rather that "subjective belief or unsupported speculation." *Daubert*, supra at 590. The opinion must be based on facts. *Mitchell v. Gencorp, Inc.*, 165 F.3d 778, 781 (10th Cir. 1999).

Federal Rule of Evidence 702 imposes three prerequisites on the admissibility of expert testimony. First, the "specialized knowledge" of the witness must "assist the trier of fact to understand the evidence or to determine a fact at issue" (emphasis added). Second, the expert must be qualified by "knowledge, skill, experience, training or education". Finally, the testimony must be based on "sufficient facts or data", the testimony is the product of reliable "principles and methods", and the "witness has

applied the principles and methods reliably to the facts of the case". Fed.R.Evidence 702. The last requirement is commonly referred to as the gatekeeping function of the Court to ensure that only expert testimony that is both relevant and reliable is admitted. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999); *Daubert v. Merrell-Dow Pharm., Inc.,* 509 U.S. 579, 592-93 (1993); *Dodge v. Carter,* 328 F.3d 1212 (10th Cir. 2003).

The testimony must not only be relevant, it also must not unfairly prejudice the jury, confuse the issues, or mislead the jury, nor can it cause undue delay, waste time, or result in the "needless presentation of cumulative evidence." Fed. R. Evid. 403. The "[r]eliability analysis applies to all aspects of the expert's testimony, including the facts underlying the opinion, the methodology and the link between the facts and the conclusion drawn. Consequently, the court must make a practical, flexible analysis of the reliability of the testimony considering relevant factors in the circumstances of the case." *Kumho,* 526 U.S. at 153 (citations omitted). Also, while *Daubert's* focus is on the methodology used in arriving at an opinion, the court must review conclusions as well. *Dodge*, 329 F.3d at 1222. The Court must review opinions to determine whether the only connection between the data and the opinion is the ipse dixit of the expert. *Id*. The burden is on the proponent of the expert testimony, Defendant in this case, to show by a preponderance of the evidence that his expert's testimony meets the *Daubert* standard. 509 U.S. at 592 & n.10. Defendants have failed to meet their burden and Mr. Joyner's opinion should be stricken.

Mr. Joyner should not be allowed to testify at trial because his opinions do not meet the test for admissibility set forth in *Daubert*, 509 U.S. 579 in that his opinions are unreliable, speculative, not based in science and will not assist the trier of fact to

understand or determine whether the force used by Defendant Bludworth and Wright against Plaintiff was unreasonable or unlawful. Defendants literally state that just because Mr. Joyner cannot render any opinions about crisis intervention doesn't mean he cannot testify about the use of force in this case. Doc. 90 at page 4. How can Joyner render any opinions about use of force without considering the totality of the circumstances which requires anyone including the officers to consider the mental health of Mr. Wood as well as the crisis intervention that should or should not have been used? He simply cannot.

Mr. Joyner admits that he cannot render any opinion about Mr. Wood's mental health or how it affected Mr. Wood's actions or inactions. Doc. 72 pages 4-5. This is a central issue in this case and goes to the totality of the circumstances and whether Defendants actions were reasonable. Mr. Joyner just completed, roughly one year prior to the taking of his deposition, a basic CIT course while attending a law enforcement training academy which is the same as basic police academy training. Defnddts contend that this is a use of force case but this ignores the Complaint which Plaintiff filed which clearly states as does the subsequent briefing (Doc. 60) that this case is about the fact that in the course of investigating and detaining Mr. Wood, Defendants failed to accmodate Mr. Wood's mental health issues and as such Planitff has brought claims alleging violations of the ADA as well as the fact that Defendants did not follow the mandates of the crisis intervention trainaing they received. Mr. Joyner as well as Defendants admit that Mr. Joyner **never** received nor reviewed Defendants' training that they received at the academy. Plaintiff's expert did. Defendants have come forward now only after Plaintiff filed her motion to exclude Joyner and supplemented Mr. Joyner's expert report

with said training materials. Defendants' state that it was their oversight that these were not provided to their expert prior to his deposition and prior to his expert report being rendered. The question becomes if Mr. Joyner knew he didn't have Defendants' training records or materials, why he didn't ask for them from his counsel given he should have known he would need this in order to evaluate whether their actions were in line with their training, how they were trained on the use of force, crisis intervention, interactions with the mentally ill, and the ADA among others. How, without their training materials was he even able to render an opinion or give a deposition? He did because he based his opinions not on the actual evidence in this case but on his long litany of biased police work as shown in his report (See Doc 90-1 pp 26-28) and speculation which is improper. Mr. Joyner states on pages 13-15 of his report attached as Exhibit A to Defendants' Response Doc. 90-1, that "Officers are typically taught …". Mr. Joyner states this verses stating "Defendant officers were trained that". Mr. Joyner used his generalized speculation of how officers are typically trained to render his opinion on how Defendant officers' actions in this case were reasonable (Doc. 90-1 pp. 15-17). This is not proper.

Defendants cannot argue that Mr. Joyner can offer an unbiased expert opinion. One only needs to look at Mr. Joyner's CV which is attached to see that he has only testified on behalf of Defendants and in favor of law enforcement. He also admits this during his deposition. See Exhibit A 183:5-11.

Mr. Defendants cannot now undue what has been done and rewind the clock. Plaintiff has taken Mr. Joyner's deposition at their time and expense (over three thousand dollars $3,000.00) and the deadline to disclose expert opinions expired long before Defendants caught their mistake. Plaintiff has been prejudiced by this late disclosure as

Plaintiff cannot now spend additional money and resources to redo the deposition, report, and motion practice.

He states he has the qualifications to provide expert testimony on the ADA based on a mandatory training as required by the FBI when he was working for the FBI, and training from the law enforcement academy of Texas (basic law enforcement training), and he did some research on his own via the DOJ standards on ADA. Doc. 72-1 at 12:22-13:15. His qualifications are no better than the Defendant Officers or attorneys in this case, all of whom would not meet the requisite qualifications to render any expert opinion on the ADA. Interestingly, Defendants make the same argument in regards to their motion to exclude Plaintiff's expert Dr. Kernen, stating she does not have the requisite experience to opine on the ADA. See Doc. 73 pages 6-7.

Additionally, Mr. Joyner works for the Spring Valley Village Police Department in Houston, Texas which is the same as the Former Chief of police for APD Ray Schultz. As such he also has a conflict of interest. Ironically he claims to not know Ray Schultz but yet he also in the next breath states, "Ray…oh Ray Schultz…" and then goes on to state that Schultz works for a neighboring police department that is an adjoining community. See Joyner Deposition at 7:18-8:12 attached hereto as Exhibit A.

Defendants do not explain in any way how Joyner's testimony will assist the jury in determining whether the force used was reasonable if he cannot opine as to the whole encounter. "[I]t is plainly within the trial court's discretion" to determine whether expert testimony is admissible when the expert offers to testify on an issue that a jury is capable of assessing for itself. *Vining on Behalf of Vining v. Enter. Fin. Grp., Inc.,* 148 F.3d 1206, 1218 (10th Cir. 1998).

6

Clearly and as admitted by Mr. Joyner and others including Defendant Bludworth and his sergeant – Sergeant Altman - Mr. Wood was not a threat when Bludworth first encountered him and there was no probable cause to arrest Mr. Wood when Defendant Bludworth first arrived. See Doc. 60, Undisputed Fact Nos. 18, 20, 23, 25, 46, 72, and 73. If Mr. Joyner is to opine as to the standard of care in regards to police practices and procedures he has already failed as he cannot offer any opinions as to the totality of the circumstances as Defendants continue to state. The totality of the circumstances started at the minute dispatch was called and the officers were responding to the call. The encounter didn't start, as Defendants would like the Court to believe, when Mr. Wood pulled out the knives. He cannot render any testimony as admitted by himself and Defendants as to the mental health of Mr. Wood or how it affected his actions or inactions, he cannot render any opinions on training or the Defendant Officers use of force given his report is absent any review of how or in what method Defendants were trained to investigate, detain, or use force on a subject. This goes against Defendants' arguments that he permissibly opines on the aforementioned. Doc. 90 at page 6.

As a result of violating Vincent's rights under the ADA by, among other things, not utilizing his training which was meant to accommodate persons who suffer from mental health issues, Defendant Bludworth created the need to use force with Vincent and indeed did so, killing Vincent. What is important to recognize is that Defendants do little to nothing to acknowledge this fact and instead focus the court solely to the place in the encounter when Vincent pulled the knives out of his backpack. But wait, one must always ask as the Courts require, how did we get here? How did Vincent go from standing in the parking lot of the Circle K with no weapons in his hands, calm and posing

no threat to himself or anyone else to pulling out two knives out of his backpack? Plaintiff explains this in her Motion for Summary Judgment [Doc. 60] and for brevity's sake and as allowed under the D.N.M.LR-Civ.7.1(a) Plaintiff refers the Court to said motion and the facts and arguments outlined therein. Defendants' expert has admitted that he can offer no expert testimony as to any aspect of this case except the use of force, i.e. at the point that the knives were pulled out of Mr. Wood's backpack. Given he admits that he cannot opine as to the mental health of Mr. Wood or any aspect thereto such as the importance of turning off your sirens and lights before interacting with Mr. Wood, Mr. Joyner's testimony would only go to confuse and mislead the jury among other things.

III.   Conclusion

WHEREFORE, Plaintiff respectfully requests that the Court grant her Motion and Memorandum of Law in support thereof and exclude the expert opinion and report of Mr. Charles Joyner and any such relief that the Court deems proper.

Respectfully submitted,

**LAW OFFICE OF FRANCES CROCKETT**

*/s/ Frances C. Carpenter*
Frances C. Carpenter
925 Luna Circle NW
Albuquerque, NM 87102
505-314-8884, Fax: 505-835-5658

And

Katherine Wray
Wray & Girard PC
102 Granite Avenue NW
Albuquerque, NM 87102
505-842-8492, Fax: 505-243-2750
*Co-Counsel for Plaintiff*

It is hereby certified that a true copy of the foregoing pleading was served via CM/ECF to all counsel of record this 23rd day of June, 2016.

*/s/ Frances C. Carpenter*